812 F.2d 991
 Barbara Ann CLARK, Individually and on Behalf of All Others
Similarly Situated and Their Dependants,
Plaintiffs-Appellants,
v.
Honorable R.I. PRICHARD, III, Officially and in His Capacity
as Circuit Court Judge of the 15th Circuit
District, Lamar County, MS, et al.,
Defendants-Appellees.
 No. 86-4505.
 United States Court of Appeals,
Fifth Circuit.
 March 23, 1987.
 
 Jeremy David Eisler, Martha Bergmark, Southeast Miss. Legal Services, Hattiesburg, Miss., for plaintiffs-appellants.
 Robert L. Gibbs, Asst. Atty. Gen., Edwin L. Pittman, Atty. Gen., Jackson, Miss., for defendants and appellees.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before GARWOOD, JOLLY and HILL, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 We confront the contention by Barbara Clark that her constitutional rights were violated by a condition of her probation that required her to stay off welfare by getting and keeping a job. Because we agree with the district court that Clark has failed to show a likelihood of prevailing on the merits of her claim, we affirm the district court's denial of her motion for a preliminary injunction.
 
 
 2
 * A.
 
 
 3
 On June 14, 1984, the appellant, Barbara Clark, pleaded guilty in state court to a charge of aggravated assault. She was given a suspended ten-year prison sentence and five years probation. Before her plea and sentence, she expressed a desire for probation and a willingness to become gainfully employed. Clark said she would place her children with her mother during her period of probation. This representation, in an attempt to persuade the trial judge to award probation instead of confinement, was made voluntarily without coercion by the state court. Immediately before her sentencing, Clark arranged for her mother to assume custody of her six children.[1] While they were in Clark's mother's care the children remained eligible for public assistance. The presiding state judge, Judge R.I. Prichard, took these arrangements, together with other factors[2] into consideration at the sentencing hearing, and sentenced Clark to supervised probation. One of the conditions of probation was that Clark work to support her dependants.
 
 
 4
 Judge Prichard, in accordance with his custom of explaining to probationers each provision of their probation agreement, advised Clark that she was required to work, and to make the "maximum effort" to find employment in order to provide for herself and for her dependants. Judge Prichard denies that this statement reflects a policy that probationers could not apply for and receive public assistance; rather, he asserts that any probationer could apply to him for a modification of probation conditions, with each case reviewed according to its particular facts. He provided case examples in which other probationers sought and obtained permission to apply for public assistance benefits without a threat of revocation of probation. The judge's testimony was supported by other witnesses.
 
 
 5
 In December 1985, Clark reassumed custody of her children, and in January 1986 applied for Aid for Dependent Children (AFDC) benefits. She did not advise the court of her application for benefits nor that the children had returned to her custody. Upon learning of these developments, her probation officer, the defendant Bilbo, advised Clark of the possible consequences of acting without court approval, and Clark voluntarily stopped receiving the benefits.
 
 
 6
 At this point Clark filed this class action suit in federal district court against Judge Prichard, probation officer Bilbo, and prison commissioner Morris Thigpen, seeking to enjoin enforcement of the defendant's alleged policy of prohibiting probationers from applying for welfare benefits. She also sought to enjoin revocation of her probation.
 
 B.
 
 7
 The district court denied the motion for a preliminary injunction, holding that Clark's chances of prevailing on the merits were not substantial because, as a factual matter, Clark had failed to convince the court of a policy of denying public benefits to probationers. Rather, the district court perceived the real issue to be whether it was constitutional to require a probationer to request a hearing for the modification of probation when the probationer suffers hardship after expressly agreeing to the condition. Relying on Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), the court concluded that the state's provision of a hearing for modification of the terms of probation satisfied constitutional requirements.
 
 
 8
 The district court ruled that Clark had failed to demonstrate irreparable injury because she had yet to request a hearing to obtain modification of her probation and there was no evidence that she would not be accorded a fair hearing. The district court also concluded, on the basis of the state court's record of handling similar cases, that Clark's probation would probably not be revoked. Finally, the district court held that the balance of harms and the public interest worked in favor of the state, which had a keen interest in enforcing its probation contracts. The district court therefore denied Clark's motion, and this appeal followed.
 
 II
 
 9
 The prerequisites for granting injunctive relief were set out by this court in Canal Authority of the State of Florida v. Callaway, 489 F.2d 567 (5th Cir.1974), which held that such extraordinary relief would issue only where (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest. Id. at 572-73. The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. Mississippi Power and Light Co. v. United Gas Pipeline, 760 F.2d 618, 621 (5th Cir.1985).
 
 
 10
 Clark argues that the district court erred when it concluded that she had not shown a likelihood of prevailing on the merits. According to Clark, the conditions placed on her probation were illegal because: (1) they denied probationers due process; (2) they denied probationers and their children equal protection of the laws; and (3) they constituted unduly intrusive and constitutionally impermissible conditions of probation. Clark also argues that the district court was in clear error when it found that she had not shown that she would suffer irreparable injury if the injunction were not granted, and that granting the preliminary injunction would not be in the public interest. We consider Clark's arguments in turn.
 
 III
 
 11
 Clark maintains that the defendants' policy[3] of requiring probationers to seek modification of the conditions of probation in order to receive public assistance violates the due process clause of the fourteenth amendment. The district court, however concluded that under Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), the defendants' policy satisfied due process. We agree.
 
 
 12
 In Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221, the Supreme Court held that the State of Georgia violated the due process clause of the fourteenth amendment[4] when it revoked the petitioner's probation for failure to pay a fine, without inquiring into the reasons for the failure to pay. Id. at 672, 103 S.Ct. at 2072. The Court further noted that if the probationer could not pay despite sufficient good faith efforts, the sentencing court would be obligated to consider alternative measures of punishment, other than imprisonment; indeed, the sentencing court would be justified in imposing imprisonment only if the alternatives were not adequate to meet the state's interest in punishment and deterrence. Id. at 672, 103 S.Ct. at 2072.
 
 
 13
 The district court found that Judge Prichard's requirement of a hearing for modification of the terms of probation did not violate Clark's constitutional rights under Bearden, but rather such a hearing served to protect against intrusion on those rights. The district court was correct. Unlike Bearden, this is a case where the sentencing court provides an opportunity for the probationer to seek modification of probation conditions, as opposed to automatic revocation of probation for failure to comply with a condition. The hearing provides the sentencing court the opportunity referred to in Bearden to consider whether the probationer should receive public assistance because she has been unable to find work despite good faith efforts to do so. We believe that such procedures safeguard Clark's due process rights. It is therefore apparent that Clark has not shown a likelihood of prevailing on her due process claim.
 
 IV
 
 14
 Clark argues that the defendants' policy of denying, albeit subject to modification, public assistance to probationers violated the equal protection rights of probationers and their dependant children.[5] Clark's equal protection claims lack merit.
 
 
 15
 Whether a claim made under the equal protection clause of the fourteenth amendment will be successful depends critically on the standard of review that is applied to the state action complained of by the plaintiff. Classifications created by state action which disadvantage a "suspect class" or impinge upon the exercise of a "fundamental right" are subject to strict scrutiny, and will be upheld only when they are precisely tailored to serve a compelling state interest. Plyler v. Doe, 457 U.S. 202, 216-17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Classifications that disadvantage certain other groups, such as women, are subject to an intermediate level of scrutiny, and will be upheld only when they are shown to further a substantial interest of the state. Id. at 217, 102 S.Ct. at 2394. Outside these categories, equal protection claims are analyzed under the rationality test. Regan v. Taxation with Representation of Washington, 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983); Price v. City of Junction, Texas, 711 F.2d 582, 590 (5th Cir.1983). Under the rationality test, the state action need bear only a rational relationship to a legitimate state interest in order to be sustained. Plyler v. Doe, 457 U.S. at 216, 102 S.Ct. at 2394; Town of Ball v. Rapides Parish Police Jury, 746 F.2d 1049, 1058 (5th Cir.1984). Clark argues that the defendants' policy discriminates between indigent and nonindigent probationers, and between the children of probationers and nonprobationers.[6] Clark also argues that the defendants' policy impinges upon a fundamental right, the right to public assistance. Yet none of Clark's claims warrants subjecting the defendants' policy to anything more than a simple rationality review.
 
 
 16
 Indigents are not a suspect class for purposes of equal protection review. Maher v. Roe, 432 U.S. 464, 470-71, 97 S.Ct. 2376, 2380-81, 53 L.Ed.2d 484 (1977); San Antonio School District v. Rodriguez, 411 U.S. 1, 29, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). Furthermore, Clark does not cite any authority for the proposition that children of probationers are a suspect class, nor does Clark advance any argument that this court should so hold. Finally, Clark incorrectly argues that the right to public assistance is a fundamental right for purposes of equal protection review. Neither the Supreme Court nor this court has ever held that any substantive right to welfare exists under the United States Constitution. The cases cited by Clark, such as Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), have held that public benefits, once conferred upon recipients by statute, qualify as property interests for purposes of the due process clause. But these cases have not held that there is a constitutional right to receive these benefits in the first place.
 
 
 17
 It therefore follows that under the equal protection clause, the actions of the defendants are subject only to rationality review and will be upheld if they bear a rational relation to a legitimate state interest. Contrary to Clark's assertions, the district court found that the sentencing judge did not deny probationers public benefits, but rather required them to seek modification of probation terms in order to apply for these benefits without violating the terms of their probation. But in any case, restrictions of this sort on the receipt of public assistance by probationers are valid under the equal protection clause as such restrictions are rationally related to the state's legitimate interests in encouraging probationers to be self-sufficient, to be responsible to their families, and to occupy their time in a worthwhile manner and generally to rehabilitate themselves. It is thus clear that Clark has not shown a likelihood of prevailing on her equal protection claims.
 
 V
 
 18
 Clark argues that the probation conditions imposed on her that limit her ability to obtain public assistance are unduly intrusive and constitutionally impermissible restrictions on her constitutionally protected right to receive essential food, clothing, housing, and medical care. This argument, if not frivolous, is close to being so for two reasons: (1) the "policy" in question did not have the effect of denying Clark essential food, clothing, housing and medical care; and (2) Clark's argument assumes that she has a constitutional right to welfare when, as mentioned earlier, no such right exists.
 
 
 19
 Clark cites Goldberg v. Kelly, 397 U.S. at 254, 90 S.Ct. at 1011 for the proposition that there is a constitutional right to receive essential food, clothing, housing, and medical care. Clark seriously misconstrues Goldberg. The Court in Goldberg held that welfare benefits, which recipients were receiving pursuant to a statutory entitlement, could constitute a property interest for purposes of the procedural protection afforded by the due process clause of the fourteenth amendment. 397 U.S. at 262-63, 90 S.Ct. at 1017-18. But the fact that public assistance is a protected interest for purposes of the due process clause does not lead to the conclusion that the federal Constitution affirmatively requires states to provide such assistance. The due process clause prevents states from depriving citizens of property without due process of law, yet no one understands this to mean that the citizens have an affirmative right to receive property from the state. Goldberg held that once the state confers public assistance benefits on recipients, it may not deprive them of such benefits without due process. But neither Goldberg nor any other decision has held that the Constitution requires states to provide public assistance to the needy.[7]
 
 
 20
 We conclude that Clark has not shown a likelihood of prevailing on her claim that the defendants' policy places on her overly intrusive and constitutionally impermissible conditions of probation.
 
 VI
 
 21
 We have concluded that Clark has not shown a likelihood of prevailing on the merits of her claim.[8] Since the party seeking relief must satisfy a cumulative burden of proving all the enumerated criteria before a preliminary injunction can be granted, Mississippi Power & Light Co. v. United Gas Pipeline, 760 F.2d at 621, the district court's denial of Clark's motion for injunctive relief is affirmed.[9]
 
 
 22
 AFFIRMED.
 
 ROBERT MADDEN HILL, Circuit Judge, concurring:
 
 23
 I agree with the majority that Barbara Clark is not entitled to relief from the conditions of her probation. I also agree with the majority's conclusion that her children should not be granted any relief. I write separately, however, because I am not convinced that Clark can challenge her probation conditions through a section 1983 civil rights action.
 
 
 24
 First, Clark's action seeking suspension of a condition of her probation should be characterized as a habeas corpus action and, accordingly, dismissed for her failure to exhaust her state remedies. The majority by-passes the crucial threshold issue of whether Clark's action is best considered as a section 1983 action or a habeas corpus proceeding.[1] By failing to confront the characterization issue, the majority implicitly assumes that a probationer may challenge the condition(s) of her probation by way of a section 1983 action. Since the majority does not explain if or why Clark's challenge is particularly unique, I can discern no reason why the next probationer should not also be entitled to same assumption. Thus, the majority's opinion is a quiet yet open invitation to state probationers to use a federal court as the initial forum to challenge and complain about the conditions of their probations. I cannot join such a broad and unexplained invitation.
 
 
 25
 In her complaint Clark requested the district court enjoin or suspend the condition of her probation which limits her ability to apply for and obtain public welfare assistance. Pursuant to Miss. Code Ann. Sec. 47-7-35 (Supp.1986),[2] the state court judge had required that Clark use "maximum effort" to find and maintain employment so as to support herself and her seven children. As a supplemental condition the judge explained to Clark that she could not apply for or obtain welfare benefits unless she first requested permission to do so from the court. Clark challenges this condition as being violative of her constitutional rights. As for me, the initial issue that must be addressed is what is the nature of the challenge Clark is making in her attempt to be relieved of her probation condition.
 
 
 26
 I begin by recognizing that a person on probation and subject to conditions of probation is "in custody" for purposes of the federal habeas corpus statute, 28 U.S.C. Sec. 2254. See Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963); Hensley v. Municipal Court, 411 U.S. 345, 351, 93 S.Ct. 1571, 1574, 36 L.Ed.2d 294 (1973); Caldwell v. Line, 679 F.2d 494, 497 (5th Cir.1982). While a probationer is not physically imprisoned, a condition of probation significantly restricts a probationer's otherwise apparent freedom. The probationer remains subject to government control throughout the term of probation and may be actually imprisoned if the conditions of probation are violated. Clark as a current probationer is therefore in custody for habeas corpus purposes.
 
 
 27
 In light of Clark's custodial status, I turn to the issue of the proper method by which she may challenge a condition of her probation. This question is answered by deciding what Clark is actually challenging.
 
 
 28
 If a person in custody is challenging the fact, length, or terms of her sentence then habeas corpus is the appropriate avenue of attack. See Preiser v. Rodriguez, 411 U.S. 475, 499, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973); Wolff v. McDonnell, 418 U.S. 539, 554, 94 S.Ct. 2963, 2973, 41 L.Ed.2d 935 (1974); Hernandez v. Spencer, 780 F.2d 504, 505 (5th Cir.1986); Irving v. Thigpen, 732 F.2d 1215, 1216 (5th Cir.1984); Jackson v. Torres, 720 F.2d 877, 879 (5th Cir.1983). If however a person in custody is challenging the conditions, i.e. environment, of her confinement as unconstitutional then a section 1983 action may be used to carry out that attack. See Preiser, 411 U.S. at 499, 93 S.Ct. at 1841; Alexander v. Ware, 714 F.2d 416, 418-19 (5th Cir.1983).[3]
 
 
 29
 These two rules developed in the context of prisoner rights litigation. The rules rest upon the distinction, extant in the prison context, between the fact or terms of a sentence and the conditions of life experienced while serving that sentence. As an example, to allow a prisoner to challenge through a section 1983 action the overcrowding of prison cells or prison disciplinary procedures does not undermine the fact that the prisoner is serving a ten year sentence. Thus, in the prison context a proper section 1983 action does not allow the prisoner to circumvent the habeas corpus procedures and challenge the fact, length, or terms of his sentence.
 
 
 30
 The same, however, cannot be said outside the prison context because the distinction between fact of confinement and conditions of confinement is lost. This case is illustrative of the fading distinction. See also Drollinger v. Milligan, 552 F.2d 1220, 1225 (7th Cir.1977).
 
 
 31
 Following her plea of guilty, Clark was subject to imprisonment or, in the court's discretion, probation. See Cobb v. State, 437 So.2d 1218, 1221 (Miss.1983) ("Instead of being a matter of right, it is by grace that probation is granted a defendant, and within his sound judicial discretion the trial judge may fix reasonable conditions of parole and probation."); see also Miss.Code Ann. Sec. 47-7-33 (Supp.1986).[4] The court's selection of probation and the conditions imposed thereunder was her sentence. Unlike the prisoner who is sent to jail for a term of ten years and who subsequently complains about the prison environment, Clark is complaining about a specific term of her sentence and not an independent factor which develops during "incarceration." By challenging one of her probation conditions Clark is in essence attempting to alter a term of her sentence. I believe such an attack can be undertaken only through the habeas corpus route with its attendant exhaustion requirements.
 
 
 32
 An earlier case involving a probationer's challenge to her probation conditions reached a similar conclusion. In Drollinger v. Milligan, supra, a probationer challenged the conditions of her probation one of which included a requirement that she maintain employment and financially support her child. In also concluding that the challenge was a habeas corpus action, the Seventh Circuit stated:
 
 
 33
 However, the nature of custody while in prison differs significantly from that experienced while on probation. For [the probationer] the terms of her custody encompass not only the length of time she must spend on probation, but also the specific activities of her daily routine. Because probation is by its nature less confining than incarceration, the distinction between the fact of confinement and the conditions thereof is necessarily blurred. The elimination or substitution, for example, of one of the conditions of [the] probation would free her substantially from her confinement; figuratively speaking, one of the "bars" would be removed from her cell. The release from such custody, even if only partial, is the traditional function of the writ of habeas corpus.
 
 
 34
 552 F.2d at 1225 (citations omitted). The court concluded:
 
 
 35
 Habeas corpus, as we have already noted, is the appropriate remedy for a defendant seeking release from custody or expansion of the parameters of his confinement. [The probationer's] constitutional challenge to the conditions and terms of probation is an attempt to obtain such relief, and therefore, must be brought as a petition for habeas corpus.
 
 
 36
 Id.
 
 
 37
 As the Seventh Circuit has held, I would also hold that a probationer's challenge to a condition of probation must be sought in habeas corpus proceedings. Accord, Drollinger, 552 F.2d at 1225; Hanson v. Heckel, 791 F.2d 93, 96 (7th Cir.1986). This bright line rule recognizes the special nature of a probationary sentence and prevents the circumvention of the habeas corpus statute.
 
 
 38
 As for the action by Clark on behalf of her children I agree that they are not entitled any relief. They lack standing to contest the conditions of their mother's probation. See Drollinger, 552 F.2d at 1227 n. 5.
 
 
 
 [1]
 About a year after sentencing, Clark had a seventh child. From June 1984 until December 1985, the six oldest children were in Clark's mother's custody, and received public assistance
 
 
 [2]
 The presentence report showed that Clark had no significant work history, was without substantial assets and would be living in government-sponsored housing
 
 
 [3]
 Clark initially claimed that Judge Prichard and the other defendants had a blanket policy of forbidding probationers and their dependent children from applying for public assistance and she claimed that violation of this policy would result in parole revocation. The district court found as a factual matter, however, that Clark had failed to establish the existence of such a policy. The district court found that Judge Prichard allowed probationers, upon proper showing, to receive public assistance after they had petitioned him for a modification of the conditions of probation. It is not contended on appeal that the district court was clearly erroneous
 
 
 [4]
 Although the parties in Bearden argued the case on equal protection grounds, the Court concluded that a due process approach was more appropriate, and therefore followed such an approach in its analysis: "[T]he more appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process." 461 U.S. at 666, 103 S.Ct. at 2069
 
 
 [5]
 In the light of our resolution of Clark's due process claim under Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), it is not necessary for us to reach her equal protection claim. In Bearden, the Court indicated that its due process analysis also resolved Bearden's equal protection claim which was nearly identical to Clark's. 461 U.S. at 665-66, 103 S.Ct. at 2068-69. However, since Clark also advances an equal protection claim on behalf of her children, which is not resolved by our Bearden analysis, we address the merits of her own equal protection claim as well
 
 
 [6]
 Although there is some doubt that Clark's children have standing, neither party has raised the issue of standing. In view of the fact that we hold that the defendants did not violate the equal protection rights of Clark's children, it is unnecessary for us to reach the issue of whether Clark's children have standing. Furthermore, we take note of the fact in this case that the children received public benefits so long as they lived with Clark's mother
 
 
 [7]
 The rights granted citizens by our Constitution are, by and large, in the nature of limitations on government power, not obligations of government to provide benefits. See Harris v. McRae, 448 U.S. 297, 317-18, 100 S.Ct. 2671, 2688, 65 L.Ed.2d 784 (1980)
 
 
 [8]
 The defendants, citing Drollinger v. Milligan, 552 F.2d 1220 (7th Cir.1977), argue that Clark's suit is subject to dismissal because it is a habeas corpus action subject to state remedy exhaustion, which cannot be brought under 42 U.S.C. Sec. 1983, the cause of action relied upon by Clark. As to the standing of Clark's children, see Drollinger at 1227 n. 5. Although we find the defendants' argument attractive, we do not address it here as it is unnecessary to our inquiry, which is limited to the question whether Clark has shown a substantial likelihood of prevailing on the merits
 We are not, contrary to Judge Hill's concurrence, explicitly or implicitly, passing on whether relief is unavailable under section 1983 because habeas corpus is the exclusive remedy for Barbara Clark. What is before us is Barbara Clark's appeal from the denial of a preliminary injunction. It is undisputed that in this context the appellant must show a substantial likelihood that she will ultimately prevail on the merits. The holding of our opinion is simply that the appellant has not shown that she is likely to prevail on the merits even if section 1983 were applicable. We see nothing unusual about proceeding in this manner to affirm the denial of preliminary injunctive relief.
 
 
 [9]
 We note that the remaining grounds for reversal raised by Clark would also be unsuccessful
 In reviewing a district court's decision on injunctive relief, we may reverse the district court's factual findings regarding irreparable injury, balancing of the equities, and the public interest only if they are clearly erroneous. Commonwealth Life Ins. Co. v. Neal, 669 F.2d 300, 303-04 (5th Cir.1982). Clark argues that the district court's conclusions that she had failed to show either irreparable harm or that granting the injunction would not disserve the public interest were clearly erroneous. We disagree.
 Clark argues that irreparable injury will result to her if injunctive relief is not granted. Yet Clark does not dispute that she has open to her the opportunity to seek a modification of her parole conditions and yet has not availed herself of this avenue of relief. In the light of this fact, we must conclude that the district court was not clearly erroneous when it found that Clark had not met the irreparable injury criteria for injunctive relief.
 Clark also argues that the district court's finding that the public interest factor weighed in the defendants and not her favor was clearly erroneous. Clark's argument lacks merit. She criticizes the district court's finding that the state has an interest in enforcing its probation contracts, because, according to Clark, the probation contracts in this case are illegal. Yet, as discussed earlier in this opinion, there is nothing illegal about the probation contracts in this case.
 
 
 [1]
 The majority acknowledges the existence of the characterization issue, see supra n. 8, but declines to address the matter because it limits its inquiry to the merits of Clark's allegations. Such reasoning seems self-fulfilling, i.e., the issue is not addressed because the majority chooses not to address it
 The characterization issue is the threshold matter in this appeal for its resolution decides whether the district court had subject matter jurisdiction to entertain Clark's action. If Clark may challenge her probation conditions through a section 1983 action then the district court certainly would have subject matter jurisdiction to consider this case, including her request for a temporary injunction. If however Clark can attack the conditions of her probation only through a habeas corpus petition, the district court was without authority to take any action in this case because Clark has failed to exhaust her state remedies, the prerequisite to federal court subject matter jurisdiction in habeas matters. Thus, regardless of whether Clark is or is not entitled to temporary relief, we must first decide whether she can or cannot bring her action in federal court at this time.
 
 
 [2]
 Section 47-7-35 states:
 The courts referred to in Section 47-7-33 shall determine the terms and conditions of probation and may, at any time during the period of probation, alter or modify the conditions and may include among them the following or any other:
 (a) Commit no offense against the laws of this or any other state of the United States, or of the United States;
 (b) Avoid injurious or vicious habits;
 (c) Avoid persons or places of disreputable or harmful character;
 (d) Report to the probation and parole officer as directed;
 (e) Permit the probation and parole officer to visit him at home or elsewhere;
 (f) Work faithfully at suitable employment so far as possible;
 (g) Remain within a specified area;
 (h) Pay his fine in one (1) or several sums;
 (i) Support his dependents;
 (j) Submit, as provided in Section 47-5-601, to any type of breath, saliva or urine chemical analysis test, the purpose of which is to detect the possible presence of alcohol or a substance prohibited or controlled by any law of the State of Mississippi or the United States.
 
 
 [3]
 The Supreme Court has also indicated that a person in custody may challenge the conditions of his confinement through a habeas corpus proceedings. See Preiser, 411 U.S. at 499 n. 14, 93 S.Ct. at 1841 n. 14; accord Alexander, 714 F.2d at 418-19
 
 
 [4]
 Section 47-7-33 states:
 When it appears to the satisfaction of any circuit court or county court in the state of Mississippi, having original jurisdiction over criminal actions, or to the judge thereof, that the ends of justice and the best interest of the public, as well as the defendant, will be served thereby, such court, in term time or in vacation, shall have the power, after conviction or a plea of guilty, except in a case where a death sentence or life imprisonment is the maximum penalty which may be imposed or where the defendant has been convicted of a felony on a previous occasion in any court or courts of the United States and of any state or territories thereof, to suspend the imposition or execution of sentence, and place the defendant on probation as herein provided, except that the court shall not suspend the execution of a sentence of imprisonment after the defendant shall have begun to serve such sentence. In placing any defendant on probation, the court, or judge, shall direct that such defendant be under the supervision of the department of corrections.
 When an circuit court or county court places a person on probation in accordance with the provisions of this section and that person is ordered to make any payments to his family, if any member of his family whom he is ordered to support is receiving public assistance through the state department of public welfare, the court shall order him to make such payments to the county welfare officer of the county rendering public assistance to his family, for the sole use and benefit of said family.