**SOCIETY OF SEPARATIONISTS, INC. and John Doe, an employee of the State of Texas and a member of the Society of Separationists, Inc., Plaintiffs,**

v.

**William P. CLEMENTS, Governor of the State of Texas and the Capitol Chapters of the Texas Public Employees Association, Defendants.**

Civ. A. No. A–87–CA–841.

United States District Court,
W.D. Texas,
Austin Division.

Jan. 13, 1988.

---

John W. Vinson, Austin, Tex., for plaintiffs.

Cynthia Riley Alksne, Asst. Atty. Gen., Austin, Tex., for defendants.

## ORDER

WALTER S. SMITH, Jr., District Judge.

The Plaintiffs move this Court to issue a preliminary injunction enjoining the singing of religious Christmas carols at a holiday program to be held in the Rotunda of the Texas State Capitol Building claiming that the caroling would be a violation of the Establishment Clause of the first amendment. Defendants argue that the purpose of the program is primarily secular and any benefit it may confer on a particular religion is indirect, remote, and incidental.

As in any Establishment Clause case, the factual context of the controversy here is crucial—it also happens to be undisputed. On November 6, 1987, the Governor of Texas signed an "Official Memorandum" designating 3:30 p.m. December 17, 1987, as the time for the annual "Christmas Carol Program" to be sponsored by the Texas Public Employees Association (TPEA) which is a non-profit association that functions as a lobby group for employees of the State of Texas. The term "Christmas Carol Program" is, in fact, a misnomer. While the "Official Memorandum" itself suggests that the program will be exclusively the singing of carols so that "beautiful and inspirational sounds fill the Rotunda," the program will actually consist of the presentation of a Christmas tree to the State of Texas, speeches by one or more state politicians, presentation of the TPEA's yearly donation to three local charitable organizations, a visit by Santa Claus, a performance of a portion of Handel's Messiah, and finally the singing of *two* religious Christmas carols to close the program. Perhaps re-

ferring to this program in some other manner would avoid future misunderstandings.

Preliminary injunctive relief is an extraordinary remedy and will issue only where the movant carries its burden of proving each of the following four prerequisites:

1) there is a substantial likelihood the movant will prevail on the merits;

2) there is a substantial threat that irreparable harm will result if the injunction is not granted;

3) the threatened injury outweighs the threatened harm to the defendant; and

4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir.1987) (citing *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567 (5th Cir.1974)).

■ Since the Court is of the opinion that the Plaintiffs have not carried their burden of establishing a substantial likelihood of success on the merits of this case, the Court finds that they have failed to carry their burden of establishing all four prerequisites, thus, precluding issuance of a preliminary injunction and restricting the Court's discussion to the issue of whether success on the merits is likely.

The Plaintiffs challenge the constitutionality of the State of Texas' allowing the singing of the two religious Christmas carols in the Capitol Building. In examining this issue, there is a well-established three-prong test which serves as a starting point:

1) whether the challenged conduct has a secular purpose;

2) whether the challenged conduct's principal or primary effect is to advance or inhibit religion; or

3) whether the conduct creates an excessive entanglement of government with religion.

*Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).

Although the Supreme Court has noted that courts cannot "be confined" by any single test or criterion in this sensitive area,[1] the Court has consistently turned to the *Lemon* test to guide its analysis and has recently reaffirmed its validity in *Edwards v. Aguillard,* —— U.S. ——, 107 S.Ct. 2573, 2576–77, 96 L.Ed.2d 510 (1987) and *Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). Under the *Lemon* test, challenged state action "violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards v. Aguillard,* —— U.S. ——, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987). In this case, the Plaintiffs agree that this is not an instance of excessive government entanglement with religion, therefore, the Court will address itself to only the first and second prongs of *Lemon.*

■ The first prong concerns the question of whether there is a secular purpose for the program which the State of Texas is allowing to be held on state property. A careful distinction must be drawn in this regard. The question is not, as suggested by the Plaintiffs, whether there is a secular purpose, in this case, for the inclusion of the two religious Christmas carols in the program. Rather, the question is whether there was a secular purpose for allowing the program *as a whole* to be held in the Rotunda of the Capitol Building. The reason the program as a whole must be considered is because the State of Texas is not responsible for nor in control of the particular agenda of the program. This program was planned, sponsored, and put together by the Texas Public Employees Association (TPEA), a private organization. The extent of the "state action" in this case is the Governor of Texas officially sanctioning the use of the Capitol Rotunda as the site of the entire program and allowing such to take place. Thus, there is no issue here of whether there is a secular purpose behind specifically including the two religious Christmas carols in the program. In short, the complained of state action is in allowing the program as a whole to go forward in the Capitol Rotunda, and questions of

---

**1.** *Lynch v. Donnelly,* 465 U.S. 668, 679, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984).

why the two religious Christmas carols were included as part of the program are irrelevant to the inquiry here. *See Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (held that the District Court "plainly erred" in focusing almost exclusively on a nativity scene which was only a part of a larger display).

With this distinction in mind, the question of whether there is a secular purpose for allowing the program to be held on state property becomes readily answerable. It is plain from the program's entire agenda and the "Official Memorandum" that the two primary purposes of the program are 1) to allow state employees an opportunity to "enjoy fellowship" in the "true spirit of Christmas" (the Memorandum does not take a position on whether the "true spirit of Christmas" is a religious or secular notion), and 2) to allow the TPEA an opportunity to formally present donations to local charitable organizations. Both of these purposes are legitimate, secular reasons for allowing the program to proceed on state property. Thus, the first prong of *Lemon* is satisfied.

■ The second prong of *Lemon* concerns whether the principal or primary *effect* of the challenged state action will either advance or inhibit religion. In this regard, the question in the present case is whether allowing the program *as a whole* to be held in the Capitol Rotunda has the principal or primary effect of advancing Christianity (the two religious carols are of a Christian religious orientation). Since the principal or primary purposes of the program are to provide a holiday "get-to-gether" for state employees and a formal setting for charitable donations, and the way these purposes will be pursued is entirely devoid of any religious overtones, certainly the primary effect of the program as a whole is not going to be the advancement of Christianity. The *only* religious aspect of the entire program will be the closing two Christmas carols. These two carols when compared to the content of the rest of the program become virtually inconsequential to the sum total of the program's effects. In no sense can it be said

that the principal or primary effect of this program will be to advance religion. Therefore, the second prong of *Lemon* is satisfied.

The analysis under *Lemon*, standing alone, would be enough to warrant denying the application for preliminary injunction. However, in reviewing Supreme Court precedent in this area, this Court is of the opinion that the Supreme Court's reasoning and holding in *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), is directly analogous to and lends support to the disposition of this case. In *Lynch*, the city of Pawtucket, Rhode Island participated in erecting a holiday display which included, among other things, a Christian nativity scene or "créche." In holding the créche was not violative of the Establishment Clause, and that the créche did not have the primary effect of advancing religion, the Supreme Court noted:

> We can assume, *arguendo*, that the display advances religion in a sense; but our precedents plainly contemplate that on occasion some advancement of religion will result from government action. The Court has made it abundantly clear, however, that "not every law that confers an "indirect," "remote," or "incidental" benefit upon [religion] is, for that reason alone, constitutionally invalid." [citations omitted]. Here whatever benefit there is to one faith or religion or to all religions, is indirect, remote, and incidental; display of the créche is no more an advancement or endorsement of religion than the Congressional and Executive recognition of the origins of the Holiday itself as a Christ's Mass," or the exhibition of literally hundreds of religious paintings in governmentally supported museums.

*Lynch v. Donnelly*, 465 U.S. 668, 683, 104 S.Ct. 1355, 1364, 79 L.Ed.2d 604 (1984) (quoting *Committee for Public Education and Religious Liberty v. Nyquist*, 413 U.S. 756, 771, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948 (1973)).

■ The factual situation that the *Lynch* Court was speaking to is exactly analogous to the factual context of this case. In *Lynch*, the effect of the créche was "indi-

rect, remote and incidental" because it was only a single component of a larger, mostly secular display. Here, we have precisely the same situation. The effect of the two religious carols is indirect, remote and incidental for Establishment Clause purposes because they are only a single component in a much larger, predominately secular holiday program. It would take an unacceptable amount of analytical stretching and overreaching to suggest anything other than that the two carols in this case are, at the very least, as incidental to the program at issue here as the créche was to the display in *Lynch.*

Plaintiffs argue that the Seventh Circuit's opinion in *American Jewish Congress v. City of Chicago,* 827 F.2d 120 (7th Cir.1987), dictates that singing the two religious carols *in the Capitol Building* violates the Establishment Clause. However, the Plaintiffs' reliance on *American Jewish Congress* is misplaced. In that case, the Seventh Circuit drew, not one, but two interrelated distinctions between its facts and those of *Lynch.* First, it was crucial that the nativity scene in *American Jewish Congress* was isolated and set apart from other, secular decorations in Chicago City Hall. This isolation gave it a greater amount of independent, religious significance to anyone observing it. An observer would receive a *purely* religious message from viewing an *isolated* nativity scene. Whereas, if the nativity scene were part of a larger, more comprehensive and secular holiday display an observer would glean a message which encompasses *both* the religious and secular aspects of a nationally recognized holiday which amounts to an observer gleaning a message with independent historical and cultural value. Second, the isolation of the nativity scene *was coupled* with the fact that it was in City Hall—the seat of city government, which lent the *purely* religious message the air that it was somehow "officially" endorsed by the city government.

The logic of this distinction is absolutely dependent on the conjunction of both of these factors in order to fall outside of the scope of *Lynch.* If either one fails, the distinction from *Lynch* fails. The critical aspect of this analysis is that there must be

1) "governmental advocacy" of 2) a "particular religious message." *See Lynch,* 465 U.S. at 680, 104 S.Ct. at 1363. As in *American Jewish Congress,* if this case dealt with an isolated créche in the Texas Capitol Building there would be a first amendment problem. However, in this case, while the "government advocacy" factor might arguably be present due to the program's location in the Capitol Building, we must still ask the question, "What is it the government is advocating," in order to complete the analysis of *Lynch* and *American Jewish Congress* since the lack of an *isolated incident* of religious caroling for its own sake eliminates the "particular religious message" factor of the test. This factor is certainly absent here because, for the purpose of constitutional analysis, we consider the message of this program *as a whole,* which is both secular and religious—with the religious aspect of it being *de minimus* at best (a conclusion which cannot be drawn with respect to an isolated nativity scene which undisputably conveys a purely religious message). Here, the State of Texas is not advocating or endorsing Christianity, rather it is advocating support for charitable organizations and endorsing a primarily secular gathering for its employees. Thus, since a crucial aspect of the distinction articulated by the Seventh Circuit is absent here, *American Jewish Congress* is not controlling in this factual context—*Lynch* controls here.

In conclusion, this Court is of the opinion that the challenged program in this case has a legitimate secular purpose and does not have the principal or primary effect of advancing religion. Any effect that allowing the program to go forward in the Texas Capitol Building might have in advancing religion is indirect, remote, and incidental. Accordingly, Plaintiffs have failed to prove a substantial likelihood of success on the merits. Therefore,

IT IS ORDERED that the Plaintiffs' Motion for Preliminary Injunction be and is hereby DENIED.