Michael **HOWELL, Julie Aiken, Neil Besner, William Howard, Kaye Rochelle, James White, Sabrina White, William Andrew Siebert, and Laura Lewis**

v.

**CITY OF NEW ORLEANS.**

**Civ. A. No. 94–375.**

United States District Court,
E.D. Louisiana.

Feb. 7, 1994.

---

Eric Robert Goza, Eric R. Goza, Attorney at Law, New Orleans, LA, for plaintiffs.

Gregory David Guth, City Attorney's Office, New Orleans, LA, for defendant.

## TEMPORARY RESTRAINING ORDER

CLEMENT, District Judge.

Plaintiffs seek a temporary restraining order prohibiting the City of New Orleans from enforcing Municipal Ordinance No. 93–16192MCS which took effect February 1, 1994. A status conference was held with counsel for both plaintiffs and defendant present. The parties were instructed to submit memoranda by February 4, 1994. After reviewing the ordinance and the memoranda submitted by the parties, this Court finds, for the reasons stated below, that the prerequisites for granting a temporary restraining and/or preliminary injunction have been met and that plaintiffs' application for a temporary restraining order should be GRANTED.

Ordinance 93–16192MCS defines "street entertainers" and "readers" and then limits the number of permits to be issued to readers to 24. Plaintiffs are among those defined by the ordinance as "readers." They claim that their expressive activity is protected speech for purposes of the First Amendment to the Constitution of the United States and that the ordinance constitutes a content-based restriction on the exercise of free speech by singling out "readers" and excluding them from Jackson Square.

Defendant City of New Orleans does not contest that the plaintiffs' activity is expressive activity protected by the First Amendment. Rather, the defendant denies that the ordinance constitutes a content-based restriction on speech and contends that the ordinance only seeks to limit the number of readers in Jackson Square—a reasonable time, place and manner restriction.

The prerequisites for issuance of a temporary restraining order or preliminary injunction are as follows:

(1) a substantial likelihood that the movant will prevail on the merits;

(2) a substantial threat that irreparable harm will result if the injunction is not granted;

(3) the threatened injury outweighs the threatened harm to the defendant; and

(4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir.1987).

1.

This Court finds that there is a substantial likelihood that plaintiffs will prevail on the merits. "Content-based regulations are presumptively invalid under the First Amendment." *R.A.V. v. St. Paul, Minnesota,* —— U.S. ——, ——, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992). Municipal Ordinance 93–16192MCS is obviously content-based. The ordinance defines "street entertainer" as any natural person who, *inter alia* "does not require interaction between the entertainer and any other person and whose performance does not consist of the rendering of a service or the sale or exchange of tangible personal property to any particular individual, audience member or customer . . . ."

The ordinance goes on to define a "reader" as

any person who, in the Jackson Square Reader Zone participates in, reads, lays out, presents or otherwise uses alleged fortune telling or future divining devices or activities to or for another. . . .

'Fortune telling or future divining devices or activities' includes, but is not limited to tarot cards, runes, ouija boards, palm reading, I-ching, crystal balls, and tea leaves.

The ordinance then imposes "reader regulations" stating that a reader must obtain a mayoralty permit under Chapter 46 of the City Code which is valid in the Jackson Square Reader Zone. The reader regulations further provide:

Only Readers who have engaged in Readings, in the Jackson Square Reader Zone, for a period of two (2) or more years prior to January 1, 1994, shall be eligible to

obtain Reader Permits. . . . A reader Permit issued pursuant to this section may be renewed only by the natural person who was originally issued the permit. If a reader permit is not renewed, the number of reader permits which may be issued shall be reduced by the number of permits not renewed.

Finally, the ordinance states that "[n]o person shall obtain both a Reader Permit as defined herein and a Class A or Class B Artist's permit." Thus, it is clear that the number of permits issued to readers for the Jackson Square area will eventually dwindle to zero.

Nevertheless, the City contends that readers

are not prohibited in Jackson Square, rather their numbers are limited. The remainder of the French Quarter and the rest of the City are available to readers. The distinction between readers and other entertainers was not made on the basis of content. **The readers sell their services from a fixed location for a fixed price in a one on one transaction that is inherently different from a traditional street entertainer such as a juggler, mime or musician.**

However, the ordinance does not simply prevent all persons who "sell their services from a fixed location for a fixed price in a one on one transaction" from obtaining a permit in Jackson Square unless they have had such a permit for two years. While the Ordinance refers to artists in an effort to prevent readers from circumventing the reader regulations by obtaining an artist's permit, the ordinance does not regulate artists who sell their services from a fixed location for a fixed price in a one on one transaction.

Thus, the ordinance is obviously intended to preclude by attrition only those who engage in "fortune telling or future divining devices or activities." Because the First Amendment "generally prevents government from proscribing speech or even expressive conduct because of disapproval of ideas expressed," *R.A.V., supra,* —— U.S. at ——, 112 S.Ct. at 2542, even with respect to time, place and manner restrictions, *Id.* —— U.S. at ——, 112 S.Ct. at 2544, there is a substantial

likelihood that plaintiffs will prevail on the merits.

### 2.

There is a substantial threat that irreparable harm will result if the temporary restraining order is not granted. "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir.1981).

### 3.

The threatened injury to plaintiffs outweighs the threatened harm to the defendant. Plaintiffs will be denied First Amendment freedoms if the ordinance is enforced. The defendant, on the other hand, at worst, will suffer a delay in achieving the professed goal of the ordinance—"to hel[p] preserve the unique status of Jackson Square as an enduring, central and symbolic focus of the rich and diverse heritage of the City of New Orleans in the face of increasing usage of the square. . . ."

### 4.

Finally, granting the temporary restraining order will not disserve the public interest. The parties do not dispute that Jackson Square is a traditional public forum for the exchange of ideas and expression. Thus, to continue to allow readers to perform in Jackson Square without complying with Municipal Ordinance 93–16192MCS pending the outcome of this matter will not disserve the public interest. The public interest is best served by enjoining the effect of the ordinance which seeks to limit such expression until it can be determined whether the ordinance is constitutionally valid.

CONSIDERING THE FOREGOING,

IT IS ORDERED that, effective this date, Defendant City of New Orleans and all persons acting in concert or participation with defendant, or pursuant to its authority, direction, or control, including its agents, servants, employees, and partners, **ARE HEREBY RESTRAINED FROM** enforcing

Municipal Ordinance No. 93–16192MCS until further order of this Court.