**D.P.D. INVESTMENTS, d/b/a Peepers Adult Bookstop, Plaintiff,**

**v.**

**The CITY OF BEAUMONT and Tom Scofield, Chief of Police City of Beaumont Police Department, Defendants.**

**and**

**Schwartz Investments, Inc. d/b/a The Oasis, Plaintiff,**

**v.**

**Jefferson County, Texas and The Honorable Mitch Woods, Jefferson County Sheriff, Defendants.**

**Nos. Civ.A. 1:99CV534, Civ.A.1:99CV533.**

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 7, 2000.

---

Rokki Ford Roberts, Houston, TX, for plaintiff.

Tyrone E Cooper, Dean Jerome Johnson, Beaumont, TX, for defendants City of Beaumont.

Thomas F Rugg, Assistant District Attorney, Beaumont, TX, for Jefferson County.

## MEMORANDUM ORDER

COBB, District Judge.

Plaintiffs, DPD Investments, dba Peepers Adult Bookstore (Peepers), and Schwartz Investments, Inc., dba The Oasis (Oasis), brought these two actions in this court on August 16, 1999, seeking only money damages from the City of Beaumont, and Tom Scofield, Chief of Police, City of Beaumont Police Department (Police), and Jefferson County, Texas, and Mitch Woods, Jefferson County, Texas (Police). The bases alleged by plaintiffs to recover damages from the City and County governments are 28 U.S.C. § 1343, and 2201, and 42 U.S.C. § 1983. The events leading to the filing of these civil actions occurred August 4, 1999, when "numerous police officers of the City of Beaumont" and "numerous Sheriff's deputies" armed with search and seizure warrants entered the premises of Peepers and The Oasis, and seized numerous videotapes, sexual devices, discs (DVDS), books and magazines, all of which were alleged to be obscene. In addition, persons in charge of both premises were arrested for violation of the Texas Penal Code, § 43.23.

Plaintiffs claim damages "for property loss and economic detriment without compensation, to-wit: (a) loss of property (b) loss of customers (c) loss of economic opportunity (d) loss of profits and (e) cost of litigation." In addition, plaintiffs have alleged they "suffered general damages and injury for deprivation of civil rights under 42 U.S.C. § 1983", as well as incurring attorney's fees.

Thereafter, in November 1999, the two adult book stores were again visited by the Police, with results similar to the August 4 episodes. On November 22, 1999, Peepers and Oasis sought a temporary restraining order without notice, and a preliminary injunction. The court refused a temporary restraining order without notice, but set a hearing for November 23, 1999, which was held with all parties represented by counsel.

Now before this court are the Plaintiffs' "Emergency Applications for Temporary Restraining Order and Preliminary Injunction." Peepers and The Oasis, the plaintiffs in the two above-styled cases, are sexually oriented businesses which are both owned and operated primarily by John W. DeYoung. The corporate plaintiffs have additional owners.

Now Peepers and The Oasis seek to preliminarily enjoin the City of Beaumont Police Department and the Jefferson County Sheriff's Department [the Police], from: (1) conducting illegal general searches of the plaintiff's establishments; (2) arresting plaintiff's employees without warrants or probable cause; (3) causing actual or de facto interference with plaintiff's customers; and (4) imposing a prior restraint on the promotion and exhibition of expressive material protected by the State and Federal Constitutions. This court will treat the application as one for a

preliminary injunction. Because the two cases are essentially the same in facts and law, the court now issues one order to be entered in both cases.[1] On November 23, 1999 this court held a hearing in which evidence was presented and argument heard. The court now makes the following findings:

## I. Standard Governing Injunctive Relief.

■ A plaintiff in a civil action is entitled to injunctive relief where (1) there is a substantial likelihood the plaintiff will prevail on the merits; (2) there is a substantial threat that the plaintiff will suffer irreparable injury if the restraining order is not granted; (3) the threatened injury to the plaintiff outweighs the threatened harm that an injunction may cause the defendant; and (4) granting the preliminary injunction will not disserve the public interest. *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir.1987). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted. *Id.*

## II. Analysis

### A. "Illegal" Searches

■ The court finds no merit to plaintiffs' application for a preliminary injunction preventing the Police from engaging in so-called "illegal" searches of Peepers and The Oasis. Peepers is an adult bookstore and sexually oriented business as defined by City Code. *See* Beaumont, Tex., Ordinance 98–8, § 2(19) (Feb. 3, 1998); BEAUMONT, TEX., CODE, art. 4, § 7–82 (defining adult bookstore and classifying it as a sexually oriented business). By law, adult bookstores are required to have a license and to permit inspection of their premises at all times. CODE, art. 4, § 7–83; § 7–86. Specifically, the owner of a licensed adult bookstore is required to "permit representatives of the police department ... or other city departments or agencies to in-

spect the premises of a sexually oriented business for the purpose of insuring compliance with the law, at any time it is occupied by the person managing the premises or open for business ..." CODES § 7–86(a). It is a misdemeanor if the licensee refuses access while he is open for business. CODE § 7–86(b). Similarly, The Oasis is a sexually oriented business subject to licensing and inspection by the county. *See* TEX. LOC. GOV'T CODE § 243.001 *et. seq.,* and TEXAS PENAL CODE § 43.23.

This court cannot and will not enjoin the Police from enforcing the law. The City Code, which Peepers and The Oasis do not challenge as unconstitutional, plainly gives the Police and other city officials the right to inspect the premises at all times while the store is open. Neither do Peepers and The Oasis challenge the Texas statutes. Moreover, inspection of the premises is not a search within the meaning of the Fourth Amendment to the Constitution. *See Maryland v. Macon,* 472 U.S. 463, 468–69, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). In *Macon,* an adult bookstore owner claimed an illegal search had taken place when police officers entered his store in order to determine whether the store was selling obscene materials. The Supreme Court held there was no search because the bookstore owner had no reasonable expectation of privacy where the public was invited to enter and transact business. *Macon,* 472 U.S. at 469, 105 S.Ct. 2778.

Peepers and The Oasis will have the opportunity to establish illegal searches have occurred when this case for money damages is tried on the merits. There, Peepers and The Oasis will be able to present evidence to prove whether these searches have directly caused a decrease in business. If the trier of fact agrees with their contentions, then the defendants will be required to compensate plaintiffs for all monetary damages. At this point

---

1. Because a temporary restraining order is strictly limited during the time in which it can be in effect, the court, after hearing, treats plaintiffs' motion as one for a preliminary injunction.

however, there is no evidence before me sufficient to demonstrate an irreparable harm will occur if these "illegal" searches are not stopped.[2] Moreover, business records are available and in plaintiffs' possession which are sufficient to determine business losses, if any are awarded.

Under the standards for injunctive relief, this court finds the application for a preliminary injunction on the ground that its premises are being illegally searched has no merit. First, the Police have a statutory right to inspect the premises. Second, Peepers and The Oasis do not have a reasonable expectation of privacy on the store premises. Finally, Peepers and The Oasis cannot prove that the establishments have suffered any irreparable harm. While the Police at all times are required to follow, if not enforce the law, Peepers and The Oasis can point to no specific activity in which the Police have engaged which requires the issuance of an injunction. Therefore, the equitable remedy of a preliminary injunction is not appropriate at this time and upon the record before the court.

### B. Arrest of Plaintiff's Employees Without Warrant or Probable Cause.

According to testimony at the hearing and affidavits from store employees, police officers on several occasions have entered Peepers and The Oasis and arrested certain employees. Presumably, the employees were arrested because the officers believed they were promoting obscenity in violation of § 43.23 of the Texas Penal Code, or the provisions of the city ordinance.

■ A police officer may place a person under arrest when that officer has proba-

ble cause to believe that an offense has been committed in his presence and within his view. *See* Tex.Code Crim.Proc. art. 14.01(b). In the context of the sale of obscene materials, a warrantless arrest is permissible if the officer in the store sees video sleeves or jackets which depict obscene acts. *See Price v. State,* 579 S.W.2d 492, 494–95 (Tex.Crim.App. [Panel Op.] 1979). In the November 23rd hearing, the defendants submitted six of the seized tapes (together with their jackets) and photocopies of the eleven videos jackets of other films which were seized. The video jackets explicitly depict ultimate sexual acts and contain even more graphic and detailed descriptions of the contents of the film.[3] From the evidence before me, it is clear at this time that the arresting officers formed the requisite probable cause necessary to make a warrantless arrest.

■ It must be noted however, that this is not a final finding that any of the arrests of employees were in compliance with state or federal law. It is not for this court to decide the legality of the arrests at this time. That is the province of the state courts in which the accused will be tried. The injunctive relief which the plaintiffs seek is quite broad in that it simply asks that the Police be enjoined from making illegal arrests without warrants or probable cause. From the evidence before me, it appears that the Police, in making their arrests, have complied with the requirements of the law. Further, there is no indication that any future harm will occur. Thus, plaintiffs' motion for a preliminary injunction enjoining the Police from making arrests is denied. Again, this allegation will be further addressed when the

---

**2.** A preliminary injunction is an equitable remedy available *in personam* when there is no adequate remedy at law. Plaintiffs do not allege the two local governments cannot respond in damages.

**3.** The video jackets feature partially and fully naked bodies engaged in all sorts of ultimate sexual acts. For example, the front cover of the video titled "Working Girls # 2" features

a topless women with semen on her face. On the back, there is a detailed description of the movie with several more pictures of various combinations of fellatio and sexual intercourse between men and women and women and women. There are similar pictures on all sides of the video box. This video jacket is representative of the others which were presented as evidence in the hearing.

plaintiffs bring their case for a full trial on the merits.

### C. Actual or De Facto Interference with the Plaintiff's Customers

■ Plaintiffs have also asked this court to enter a preliminary injunction enjoining the defendants from interfering with plaintiffs' customers. Courts have recognized that police action which goes beyond that necessary to enforce criminal obscenity laws is enjoinable. *See, e.g., P.A.B., Inc. v. Stack,* 440 F.Supp. 937, 944 (S.D.Fla.1977) (enjoining police from interfering with adult book store customers), *Bee See Books, Inc. v. Leary,* 291 F.Supp. 622 (S.D.N.Y.1968) (enjoining police officers from standing in the doorway of an adult bookstore).

The defendants will be enjoined from communicating with any of the actual or potential customers of Peepers and The Oasis unless they have a reasonable articulable suspicion that criminal activity is afoot. *See generally, Terry v. Ohio,* 392 U.S. 1, 21–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Further, the defendants are hereby enjoined from parking their cars within 150 feet of plaintiffs' businesses unless they are investigating criminal activity. Furthermore, the defendants shall not maintain a continuous presence around Peepers or The Oasis with the intent of scaring away potential customers, or persuading them not to enter the premises.

### D. Imposing a Prior Restraint

Finally, Peepers and The Oasis have asked this court to enjoin the defendants from imposing a prior restraint on plaintiffs' business. Plaintiff alleges a prior restraint has been imposed over its business because the defendants have seized a large quantity of videotapes and DVD's which were offered for sale or rent to the general public. The parties have stipulated that approximately 2,900 video tapes were seized by the Jefferson County Sheriff's Department in August, 1999. The parties have also stipulated that none of these video tapes were identified by name in any warrant.

■ It is well settled that "rigorous procedural safeguards must be employed before expressive materials can be seized as 'obscene.'" *Ft. Wayne Books v. Indiana,* 489 U.S. 46, 62, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989). Twice the Supreme Court has invalidated large-scale confiscations of books and films, where numerous copies of selected books were seized without a prior *adversarial* hearing on their obscenity. *Quantity of Copies of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), *Marcus v. Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). While it is generally true that evidence of crimes may be seized on probable cause, an exception arises when items protected by the First Amendment are involved. *Ft. Wayne Books,* 489 U.S. at 63, 109 S.Ct. 916 (citing *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 326 n. 5, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)). The Supreme Court has noted that it is " '[t]he risk of prior restraint' which is the underlying basis for the special Fourth Amendment protections accorded searches for and seizure of First Amendment materials." *Id.* (quoting *Macon,* 472 U.S. at 470, 105 S.Ct. 2778).

■ Because of the risk of prior restraint, the Supreme Court has established four basic principles necessary to protect property owner's First and Fourth Amendment rights:

(1) any seizure of allegedly obscene materials, for the purpose of preserving them as evidence in a criminal proceeding, must be made pursuant to a warrant issued after a judicial determination of probable cause;

(2) law enforcement personnel may not seize multiple copies of any single item, if in so doing, such seizure takes the item out of public circulation completely;

(3) if the property owner requests, copying of seized material must be permitted; and

(4) if the property owner requests, a prompt post-seizure judicial determina-

tion of the obscenity issue in an adversary proceeding must be available. *B.A.P. Inc. v. McCulloch,* 994 F.Supp. 1131, 1143 (E.D.Mo.1998) (summarizing the case law).

In the case at hand, the defendants will be enjoined from engaging in any conduct which violates these four established principles. There is insufficient evidence before me to determine whether or not any item has been taken out of circulation completely. Furthermore, there is no evidence before me in regard to whether plaintiffs have asked to copy materials and/or asked for an adversarial proceeding to determine whether the seized items are indeed obscene. However, the evidence before me establishes that there was never a judicial determination of probable cause before most of the 2,900 videos were seized. *See* Aff. of Sgt. James Ellison (stating how a judicial determination of obscenity was made for only 3 videos).

The search warrant issued in this case states that the defendants were "commanded to enter the suspected place and premises described in said Affidavit and to seize the same and bring it before me [Jefferson County Magistrate]." After executing the warrant, the defendant's returned with 3,382 videos, 637 empty videocassette jackets and 324 sexual devices. Sergeant Ellison's affidavit states that three videos purchased from plaintiffs' store were viewed by Jefferson County Senior District Judge Larry Gist. Judge Gist determined that these three movies were obscene. The affidavit further states that similar movies with ultimate sexual acts depicted on the jackets were seen by Sergeant Ellison at the plaintiff's store on an earlier occasion.

In order to be valid, warrants to seize obscene material must provide the executing police officers a guide by which to exercise informed discretion. *Marcus,* 367 U.S. at 717, 731, 81 S.Ct. 1708. Because of the concern over prior restraints, courts require search warrants dealing with presumptively protected First Amendment materials to be particular in nature. "When a *warrant describes* the sought-after *contraband in the graphic terms of a state's obscenity statute, the particularity requirement of the Fourth Amendment is satisfied.*" *B.A.P., Inc.,* 994 F.Supp. at 1144 (citing *U.S. v. Koelling,* 992 F.2d 817, 821–22 (8th Cir.1993)) (emphasis added). The Texas statute defining obscenity, § 43.21, tracks the Supreme Court's definition of obscenity enunciated in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).[4] There is little, if any, language from Texas's obscenity statute contained within the search warrant or affidavit. Thus, the defendants will be enjoined from carrying out search warrants of Peepers and The Oasis in this manner in the future. The defendants are ordered to conduct all future search warrants in accordance with applicable Supreme Court authority. *See, e.g., Ft. Wayne Books v. Indiana,* 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989); *Maryland v. Macon,* 472 U.S. 463, 470, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985); *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317,

---

4. Section 43.21 of the Texas Penal Code reads in pertinent part:

(1) "Obscene" means material or a performance that:

(A) the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;

(B) depicts or describes:

(i) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy and sexual bestiality; or

(ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and

(C) taken as whole, lacks serious literary, artistic, political, and scientific value.

76 L.Ed.2d 527 (1983); *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); *Quantity of Copies of Books v. State of Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); *Marcus v. Search Warrants,* 367 U.S. 717, 731, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

### III. Conclusion

In this preliminary stage, the court is required to balance the interests of the First Amendment with the interest of the community in limiting crime and promoting the health and safety of the general public. It is long established that obscenity is outside the scope of First Amendment protection and that it may be regulated by the State. *See United States v. 12 200–Foot Reels of Super 8MM. Film,* 413 U.S. 123, 126, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). It is also clear that obscenity has pernicious and degrading effects which society has an interest in forbidding.[5] This court however, is called to act as a guardian of free speech and is charged to protect the dissemination of ideas. This compels the court to issue this order.

For the reasons stated above, the plaintiffs' Application for preliminary injunctions in the above-styled cases will be DENIED IN PART and GRANTED IN PART in accordance with this memorandum order.

---

5. Recently a Beaumont city council member resigned his office and pleaded guilty to accepting a bribe in violation of Title 18, United States Code, Section 666(a)(1)(B). John W. DeYoung, an owner and operator of the adult bookstores at issue in this case, paid the councilman $30,000 on order to vote for a zoning ordinance which would have favored sexually oriented business. DeYoung has now pleaded guilty to the offense of bribing a public official.