552 F.2d 1220
 Rosanna DROLLINGER and Nathan Drollinger, Plaintiffs-Appellants,
v.
Thomas K. MILLIGAN, as Judge of the Montgomery Circuit
Court, and D. O. Dulin, as Chief Probation Officer
of the Montgomery Circuit Court,
Defendants- Appellees.
 No. 75-1570.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 4, 1975.
Decided April 4, 1977.
As Amended April 6, 1977.
 
 Ronald E. Elberger, Indianapolis, Ind., for plaintiffs-appellants.
 Conrad G. Harvey, Crawfordsville, Ind., for defendants-appellees.
 Before FAIRCHILD, Chief Judge, HASTINGS, Senior Circuit Judge,* and WHELAN, District Judge.**
 FAIRCHILD, Chief Judge.
 
 
 1
 Rosanna Drollinger brought this civil rights action challenging certain conditions of her state court probation, asking the district court to enjoin their enforcement and to declare them in violation of various provisions of the Constitution. Nathan Drollinger, Rosanna's father-in-law, joined the suit alleging that the terms of Rosanna's probation also violated his interests protected by the Constitution. The district court dismissed the complaint for failure to state a claim for which the court could grant relief, specifically holding that Rosanna's action could only be brought as a habeas corpus suit, 28 U.S.C. § 2254(a), and that she has failed to exhaust her state court remedies.
 
 
 2
 In addition, the court found that since the defendants, Thomas K. Milligan, Judge of the Montgomery (Indiana) Circuit Court, and D. O. Dulin, Chief Probation Officer of the Montgomery Circuit Court, were sued in their official capacities they did not qualify as "persons" against whom a civil rights action can be brought. Finally, the court ruled that Nathan Drollinger lacked the necessary standing to challenge the conditions of Rosanna's probation, and therefore, could not bring this action. Both Nathan and Rosanna have appealed from the order. On motion, this court enjoined the enforcement of certain of these terms and conditions of probation pending the appeal.
 
 
 3
 * Rosanna Drollinger pled guilty to a charge of uttering a forged instrument. Subsequent to the plea, the Indiana trial judge, the defendant in this case, placed the plaintiff on probation for five years, requiring that she adhere to a series of conditions. On May 3, 1975 the plaintiff signed an acknowledgement agreeing to the listed "terms and conditions of her probation."[1]
 
 
 4
 The plaintiff is specifically challenging the conditions of her probation that (1) restrict her ability to share her living quarters with another person; (2) require her to support both herself and her daughter, Stephanie, only from what she earns from her employment at the Air Force Recruiting Office; (3) forbid her from accepting any gifts; (4) prohibit her from using Nathan Drollinger's home as a place where Roger Drollinger, Rosanna's ex-husband, may pick up and leave Stephanie in the course of exercising his visitation rights; (5) forbid her from associating with the other plaintiff, Nathan Drollinger, or any other member of the Roger Drollinger or Jeff Reed families; (6) impose 8:00 P.M. curfew upon her; (7) caution her to behave in a manner that would not cause anyone to question that she is violating the law; and (8) require her to attend the church of her choice regularly. Nathan Drollinger objects to those provisions of Rosanna's probation which restrict his ability to associate with Rosanna and Stephanie. Both Rosanna and Nathan seek to enjoin the enforcement of these provisions on the grounds that they violate certain of their interests secured by the Constitution.
 
 II
 
 5
 On appeal plaintiffs argue that the district court erred in dismissing their complaint for failure to state a claim. They contend that since they are challenging the conditions of probation, rather than its duration, their complaint properly states a claim under the Civil Rights Act, 42 U.S.C. § 1983. Implicit in their argument is the position that the offensive terms of probation do not define the perimeters of her confinement, and thereby their elimination would not set her free, the traditional remedy sought in a petition for habeas corpus, 28 U.S.C. §§ 2241, 2254.
 
 
 6
 With regard to Rosanna's claims, we are satisfied that they must properly be brought by means of a petition for habeas corpus. We are bolstered in this finding first by the fact that the "terms and conditions" of probation place Rosanna "in custody" within the meaning of the federal habeas corpus statute, 28 U.S.C. § 2241(c). See Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); Hensley v. Municipal Court, 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). In Jones, supra, the Supreme Court held that the petitioner-parolee was sufficiently in the custody of his parole board to permit him to proceed under the habeas corpus statute to challenge his conviction for larceny. 371 U.S. at 243, 83 S.Ct. at 377. The Court found that even though the " . . . petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the members of the . . . (p)arole (b)oard within the meaning of the habeas corpus statute." The parole order required the petitioner, for example, to visit his parole officer, "keep good company," work regularly and "live a clean, honest, and temperate life." Failure to meet these conditions might well have resulted in the petitioner's return to prison. Since we can discern no significant difference between the statutes of parole and probation with regard to the question of custody, we find that the appellant, Rosanna Drollinger, has satisfied the jurisdictional prerequisite for a habeas corpus action. See Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).
 
 
 7
 Having determined that Rosanna is "in custody," we must further consider whether the conditions and terms of her probation are the proper subject of a civil rights suit or petition for habeas corpus. Habeas corpus is the " . . . appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement." Preiser v. Rodriguez, 411 U.S. 475, 490, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973). Section 1983 provides a more general remedy for a plaintiff to bring suit for a violation of his civil rights by a person acting under "color of state law." In the prison context this remedy has been ruled to be appropriate when an inmate challenges the conditions of prison life, but not the fact or duration of his confinement.[2] Id., at 499, 93 S.Ct. 1827.
 
 
 8
 The appellants' constitutional challenge to the conditions and terms of Rosanna's probation may at first glance appear an appropriate subject matter for a § 1983 suit. A prisoner, for example, who is denied access to certain religious publications or legal materials may bring suit under § 1983 for violation of his interests protected by the Constitution. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968). However, the nature of custody while in prison differs significantly from that experienced while on probation. For Rosanna Drollinger the terms of her custody encompass not only the length of time she must spend on probation, but also the specific activities of her daily routine. Because probation is by its nature less confining than incarceration, the distinction between the fact of confinement and the conditions thereof is necessarily blurred. The elimination or substitution, for example, of one of the conditions of Rosanna's probation would free her substantially from her confinement; figuratively speaking, one of the "bars" would be removed from her cell. The release from such custody, even if only partial, is the traditional function of the writ of habeas corpus. Preiser, supra, 411 U.S. at 484, 93 S.Ct. 1827. Cf. Billiteri v. United States Bd. of Parole, 541 F.2d 938, 947 (2d Cir. 1976). Therefore, Rosanna must proceed by means of a petition for habeas corpus, a cause of action which initially requires the petitioner to exhaust her available state court remedies.[3] 28 U.S.C. § 2254(b). Fay v. Noia, 372 U.S. 391, 434-35, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).
 
 
 9
 Additionally, the distinction between the conditions and fact of confinement as set forth in Preiser is not entirely applicable in the probation context to determine whether a § 1983 suit or an habeas action is appropriate. Our analysis of the Indiana statutes authorizing the granting of probation demonstrates, however, that the plaintiff is in this suit challenging the sentence of the trial court, clearly the proper subject matter for a habeas corpus action. The granting of probation is a discretionary act, Sutton v. State of Indiana, 244 Ind. 368, 371, 191 N.E.2d 104 (1963), and in effect is an alternative to imprisonment. In placing a defendant on probation the trial court is required to impose conditions concerning the manner in which the defendant must conduct himself. Burns Ind.Stat., 1956 Replacement, § 9-2210. The court may revoke the defendant's probation if any of these conditions are violated, thereby ordering the execution of the previous judgment and causing the confinement of the defendant according to the original sentence. Sutton, supra, at 372, 191 N.E.2d 104. No appeal is permitted from the order revoking probation. Id. Rosanna Drollinger's challenge to the conditions of her probation is, therefore, an attack on the sentence of the trial court. She is seeking release from at least part of that sentence, an attempt to enlarge the scope of her "conditional liberty." Cf. Morrisey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Habeas corpus, as we have already noted, is the appropriate remedy for a defendant seeking release from custody or expansion of the perimeters of his confinement. Rosanna Drollinger's constitutional challenge to the conditions and terms of probation is an attempt to obtain such relief, and therefore, must be brought as a petition for habeas corpus.
 
 III
 
 10
 We view Nathan Drollinger's claim for relief differently. As we understand this claim, Nathan Drollinger alleges that the defendants, by restricting his ability to visit or associate with Rosanna Drollinger, and her daughter, Stephanie, have violated his rights protected by the First, Fifth, and Fourteenth Amendments. Nathan, unlike Rosanna, is not in custody, nor, since he was not convicted of a criminal offense, is he subject to the authority of the sentencing court. See, Burns Ind.Stat., 1956 Replacement, §§ 9-2201, 9-2209. His suit is a challenge only to those terms and conditions of Rosanna's probation which limit the exercise of his constitutionally protected rights. Since he is not in custody, nor was he a defendant in the criminal proceedings, he cannot seek relief through habeas corpus and may not be able to go forward with a direct appeal.[4] His suit, therefore, because of the nature of the relief it is seeking, and because of the possible closing off of other forms of relief, is properly brought as a civil rights action.
 
 
 11
 The district court found, however, that Nathan lacked the requisite standing to challenge the terms of Rosanna's probation and that the defendants did not constitute "persons" within the meaning of § 1983. Nathan's claim is based on an alleged deprivation of his constitutional interests which occurred as a result of the terms of Rosanna Drollinger's probation. We have no difficulty in finding that Nathan has alleged "such a 'personal stake in the outcome of the controversy.' Baker v. Carr, 369 U.S. 186, 204 (82 S.Ct. 691, 703, 7 L.Ed.2d 663) (1962), as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' Flast v. Cohen, 392 U.S. 83, 101 (88 S.Ct. 1942, 1953, 20 L.Ed.2d 947) (1968)." Sierra Club v. Morton, 405 U.S. 727, 732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 551 (1972). Nathan has alleged that, by the terms of Rosanna's probation, he is denied the ability to exercise his right to associate with his granddaughter, Stephanie Drollinger. He claims that he is willing and able to provide a home for Stephanie, but that the trial court has prohibited Rosanna from leaving Stephanie at Nathan's home for any period of time. These allegations, read in the light most favorable to the plaintiff, demonstrate that Nathan has suffered an injury which allows him as a threshhold matter to invoke the jurisdiction of the federal court. Warth v. Seldin, 422 U.S. 490, 498-500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). See also, Mulqueeny v. National Commission on the Observance of International Women's Year, 1975, 549 F.2d 1115 at 1120 (7th Cir. 1977).
 
 
 12
 We also disagree with the district court's finding that the defendants are not "persons" within the meaning of § 1983. State officers acting under color of state authority are properly "persons" who may be defendants in a civil rights suit. Monroe v. Pape, 365 U.S. 167, at 172, 81 S.Ct. 473, 5 L.Ed.2d 492. Our court has held in numerous cases that judges, as well as officers of the court, are not immune from § 1983 suits seeking equitable relief, and, therefore, has found that complaints charging them as defendants sufficiently state a cause of action. Jacobson v. Schaefer, 441 F.2d 127, 129 (7th Cir. 1971); Littleton v. Berbling, 468 F.2d 389, 408 (7th Cir. 1972), reversed on other grounds sub nom., O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Cf. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).
 
 
 13
 Turning our attention to the merits of Nathan's complaint, we recognize that plaintiff's claim of a deprivation by the state of his constitutionally protected interest in the nurturing and development of a child or grandchild is actionable under § 1983. The interest in the custody and care of a child by his family has been deemed "essential" and has been granted paramount importance within our constitutional framework. Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). This interest, which is rooted in the right of privacy, Griswold v. Connecticut, 381 U.S. 479, 495, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), involves the freedom to make " . . . certain kinds of important decisions." Whalen v. Roe, --- U.S. ----, ----, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). These decisions may involve a broad range of marital, sexual and familial relationships. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).
 
 
 14
 The terms and conditions of Rosanna's probation seriously limit Nathan's freedom to care for his granddaughter.[5] This basic interest in the integrity of the family unit has been afforded the protection of due process of law.[6] Meyer, supra, 262 U.S. at 399, 43 S.Ct. 625. Circumscription of this right must therefore be preceded ". . . by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Even then, the state can restrict the exercise of this right by family members only if it can demonstrate that its interest in limiting family privacy is a ". . . countervailing . . . (one) . . . of overriding significance." See Boddie v. Connecticut, 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Otherwise, the sentencing court, through its discretionary power to grant probation, may deny some family members, who are not specifically subject to the power of the court, their fundamental right to care for other family members. Stanley, supra, at 657-65, 92 S.Ct. 1208.
 
 
 15
 In this case the state may be able to show that Rosanna and Stephanie Drollinger must be sheltered in order to protect them from the criminal enterprises of other family members. Such separation must be reasonably limited to those members of the family who are likely to cause them harm. Due process requires, however, that the state provide a hearing in which those family members, who are not defendants in the criminal proceeding but whose privacy interests are being impaired, will have the opportunity to respond to the state's reasons for limiting their civil right to care for other members of the family.
 
 
 16
 For the reasons stated above, we affirm the judgment of the district court regarding Rosanna Drollinger, but reverse and remand concerning Nathan Drollinger's claim, and, assuming that the state has not afforded Nathan a hearing, we instruct the district court to enjoin the enforcement of the terms and conditions of probation which affect Nathan Drollinger's right to care for his granddaughter. This injunction will remain in effect until such time that the state provides the necessary hearing.
 
 
 
 *
 Senior Circuit Judge John S. Hastings participated in oral argument and participated in the conference of the court, but died before this opinion was submitted to him for approval
 
 
 **
 District Judge Francis C. Whelan of the District Court for the Central District of California is sitting by designation
 
 
 [1]
 The terms and conditions of Rosanna Drollinger's probation included the following:
 (1) That she is to continue her employment with the Air Force Recruiting Office. That she is not to quit or change employment without getting prior approval from the probation officer or his designee.
 (2) That when the time comes for her to go to school, if all conditions are right, she is to get the prior approval of the probation officer before she quits her job to go to school.
 (3) That she is to continue to live at her current place of residence at 208 1/2 West Chestnut Street, Crawfordsville, and that she is to live there with her daughter only, and no other person is to live there with them. She is not to change her place of residence without the approval of the probation officer.
 (4) That from her employment she is to support herself entirely. She is to pay the fine and costs imposed in this matter, and that she is to make restitution for the checks which were passed, or her share thereof as determined by the probation officer. She is also to reimburse Montgomery County the amount allowed as fees for the attorney who was appointed by the court to represent her in this matter. With the help of the probation officer, she is to work out a budget, taking into consideration her income and expenses, and she is to pay these obligations. In this connection, she is not to accept any gifts, gratuities or hand-outs from anyone to help with these obligations, they are to be paid by the defendant alone from her earnings.
 (5) Inasmuch as one Jeff Reed and Roger Drollinger may have had something to do with this, she is not to associate with either one of such individuals, or any member of the family of either such person. In that connection, since Roger Drollinger is the father of her daughter, such visitation is to be arranged without the defendant seeing or contacting Roger Drollinger and arrangements should be made for a place to leave the daughter of Mr. Drollinger to pick her up and leave her after his visitation has ended. The residence of Roger Drollinger's parents and defendant's residence are not to be such a place where Roger Drollinger may pick up and leave the child.
 (6) That she is to cooperate to the fullest extent with investigating officers or authorities in connection with this crime or any other crime of which she has knowledge which have taken place.
 (7) That she is to seek counseling through the probation officer to assist her in making a transition from being dependent on others to being independent, and self-supporting.
 (8) That she is to be in her place of residence by 8:00 P.M. and she is not to leave before 6:00 A.M. with the following exceptions: Employment keeps her out beyond 8:00 P.M.; schooling requires that she be out or if there should be an emergency with regard to the child. All exceptions to this curfew are granted with the provision that she go directly to and return from such school, employment or emergency.
 (9) That she is to conduct herself in such a manner as not to cause anyone to question whether or not she is violating the law, and that includes not being charged or accused of violating the law. This goes to the mental attitude toward the law as well as the act itself.
 (10) That she is to be in contact with the probation officer or his designee at such times as the probation officer may direct, and she is to follow his instructions and directions with regard to the terms of probation.
 (11) That she is to attend the church of her choice regularly.
 
 
 [2]
 Habeas corpus may be a parallel remedy with which a prisoner may challenge prison conditions. Preiser, infra, at 499, 93 S.Ct. 1827
 
 
 [3]
 The Indiana Supreme Court has held that "(i)n event the defendant accepts the benefits of a suspended sentence and goes at liberty under the terms of the probation, he may not thereafter appeal." State ex rel. Wilson v. Lowdermilk, 245 Ind. 93, 101, 195 N.E.2d 476 (1964). Other post-conviction relief may be available to the plaintiff, Rosanna Drollinger. See, Indiana Rules of Procedure for Post Conviction Remedies, Rule P.C. 1. This rule prohibiting appeal from an order revoking probation has apparently been rescinded by newly enacted statutes which are effective July 1, 1977. Burns Ind.Stat.Ann. (Code Edition), § 35-7-2-1 (1975)
 
 
 [4]
 We recognize that the principles of comity and federalism would ordinarily prohibit a federal court from enjoining a state criminal proceeding. Younger v. Harris, 401 U.S. 37, 43-45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). However, Nathan Drollinger was not a defendant in the state criminal trial and therefore Younger is not directly applicable. Cf. Gerstein v. Pugh, 420 U.S. 103, n. 9, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); Juidice v. Vail, --- U.S. ----, ----, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Nathan's ability to obtain relief in the state court is not clear. Because Nathan is not a defendant in the state court the threat to his federally protected rights appears to be " . . . one that cannot be eliminated by his defense against a single criminal prosecution." 401 U.S. at 46, 91 S.Ct. at 751. Even applying the principles articulated in Younger, therefore, Nathan will suffer the type of "irreparable" injury which the federal courts can remedy through the issuance of an injunction. Id
 
 
 [5]
 Insofar as Nathan argues that he is injured by being denied the right to associate with Rosanna, we are unable to find that he has standing to challenge this alleged deprivation. The terms of probation which intend to circumscribe Rosanna's conduct are personal to Rosanna, even though they may affect the rights of others as well. This is distinguishable from the terms of probation which relate to Stephanie's and Nathan's conduct, and only tangentially affect Rosanna. See discussion, infra
 
 
 [6]
 The nuclear family has traditionally constituted the unit afforded the protection of due process. We see no reason, however, not to extend this guaranty to the grandfather-grandchild relationship