**Edmund J. WENTZKA and Dona J. Wentzka, Plaintiffs–Appellants,**

v.

**Larry GELLMAN and Blunt, Ellis & Loewi, Inc., Defendants–Appellees.**

No. 92–1773.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 29, 1992.

Decided April 19, 1993.

Diane Slomowitz, Bruce C. O'Neill (argued), Fox, Carpenter, O'Neill & Shannon, Milwaukee, WI, for plaintiffs-appellants.

Michael H. Schaalman (argued), Colleen A. Scherkenbach, Quarles & Brady, Milwaukee, WI, for defendants-appellees.

Before RIPPLE and KANNE, Circuit Judges, and LEINENWEBER, District Judge.*

LEINENWEBER, District Judge.

Edmund and Dona Wentzka (the "Wentzkas") brought this action against their investment broker, Larry Gellman, and the brokerage firm of Blunt, Ellis & Loewi, Inc. ("BEL"), alleging violations of federal

---

* The Honorable Harry D. Leinenweber, United States District Judge for the Northern District of Illinois, sitting by designation.

securities laws, and common law actions for breach of fiduciary duties, intentional misrepresentation, strict responsibility for misrepresentation, and negligent misrepresentation. On May 7, 1990, the district court granted defendants' motion to dismiss the Wentzka's claims under section 17 of the Securities Act of 1933, 15 U.S.C. § 77q, and section 15(c) of the Securities Act of 1934, 15 U.S.C. § 78aa. On March 13, 1991, plaintiffs' section 10(b) claims were dismissed on statute of limitations grounds under the rule set out by this court in *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991). On January 3, 1992, the district court entered summary judgment in favor of defendants on the remaining pendent claims for breach of fiduciary duties and its three misrepresentation claims. The Wentzkas only appeal the entry of summary judgment on the state law claims.

## I. INTRODUCTION

The genesis of this suit lies in a conversation in mid–1982 in which the Wentzkas told Gellman that they were in the market for a tax shelter. Gellman informed the Wentzkas about certain limited partnerships offered by the American Republic Realty Corporation ("Amrecorp").

As Edmund Wentzka ("Edmund") recalls, Gellman claimed that Amrecorp had an excellent track record, assured the couple that their principal would not be at risk, and told them that Amrecorp would buy back their shares should they want out. Between 1982 and 1984, the Wentzkas invested $122,500 in three different Amrecorp limited partnerships.

Gellman presented the Wentzkas with a private placement memorandum for each of the three investment properties. The James Place memorandum contained the following cautionary declaration on page one:

The offering involves a high degree of risk (See "Risk Factors") and there will be payment of substantial fees to the General Partners (See "Compensation and Fees"). In addition, tax legislation has been proposed, which if adopted, could adversely affect the tax consequences of the ownership of Units (See "Risk Factors").

Under "Risk Factors," the memorandum listed eleven factors to be considered by a potential investor. The risk factor designated "Leverage" provided that:

The Partnership will finance the acquisition of Properties by borrowing. Properties purchased on a leveraged basis generally can be profitable only if they generate sufficient cash revenue to service the related debt. If income from operations cannot sustain the debt service on the mortgage, the mortgagee could foreclose on the property which may result in loss of the Limited Partner's equity.

The memorandum also contained a detailed review of the possible tax consequences associated with the investment, including a warning that changes in the tax code were being considered which, if enacted, could reduce or eliminate any tax benefits currently associated with the partnership. The memorandum "strongly urged" potential investors to consider these developments and consult their own tax advisors about the risks associated with investment. The two other placement memoranda included similar warnings.

Edmund admits that Gellman told him to review the James Place memorandum. However, Edmund's review of the memorandum was cursory. He attributes this not only to the complexity of the information, but also to the faith he placed in Gellman's judgment.

After glancing through the memorandum, Edmund told Gellman that he was concerned about some of the provisions. According to Edmund, Gellman said not to worry, told him that the provisions were "boilerplate," and assured him that their investment would be secure.

The Amrecorp investments initially performed well. However, partnership earnings soon began to fall off following changes in the federal tax laws in an increasingly overdeveloped real estate market. The Wentzkas filed this suit in 1989,

claiming that Gellman had made material misrepresentations about the risks associated with Amrecorp investments. Plaintiffs also claimed that defendants breached fiduciary duties owed to the Wentzkas under Wisconsin law. The district court rejected both arguments and entered summary judgment in favor of defendants. The district court found that plaintiffs could not have justifiably relied upon Gellman's alleged misrepresentations because the investment risks were fully and accurately disclosed in the private placement memoranda provided to the Wentzkas. The district court also determined that the Wentzkas' account with BEL was nondiscretionary and, as a result, defendants owed no fiduciary duty to plaintiffs under Wisconsin law.

## II. ANALYSIS

The parties in this case urge us to either affirm or reverse the district court's entry of summary judgment. Issues of prudence and comity, however, propel us back to an earlier stage in this litigation. In March 1991, the last of the Wentzkas' federal claims were dismissed by the district court on statute of limitations grounds. At that point, the district court retained jurisdiction over the remaining state law claims, based on its interpretation of our decision in *Graf v. Elgin, Joliet and Eastern Ry. Co.*, 790 F.2d 1341 (7th Cir.1986).

We find that the district court abused its discretion by retaining jurisdiction over the Wisconsin state law claims. True, in *Graf*, the court did state that the exercise of pendent jurisdiction may be appropriate even after the dismissal of the federal cause of action, if substantive resources have already been expended in the litigation.[1] However, our holding in *Graf* was grounded on the fact that an issue of federal law was raised as a defense to the remaining pendent state law claim. The district court was allowed to retain jurisdiction in order to resolve a dispositive issue on the basis of federal law rather than remanding the case to state court for a determination on the same issue of federal law. *See Graf*, 790 F.2d at 1346–48.

This limited interpretation of *Graf* is consistent with our other rulings in this area. *See Manor Healthcare Corp. v. Guzzo*, 894 F.2d 919, 922 (7th Cir.1990); *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 611 (7th Cir.1986); *Bernstein v. Lind–Waldock & Co.*, 738 F.2d 179, 186–88 (7th Cir.1984). In these cases, we said quite clearly that, where a federal claim drops out before trial, a district court should not retain the state claims absent extraordinary circumstances.

Prior cases have identified the types of circumstances the court considers extraordinary. In *Graf*, for example, we found that the existence of a federal defense to a state law claim constituted an extraordinary circumstance. There were two other such circumstances in *Blau Plumbing*. There, a federal trademark claim was dismissed before trial, leaving only a state law false advertising claim. We held that the exercise of pendent jurisdiction in that situation is an abuse of discretion, unless: 1) there is some other basis of federal jurisdiction or 2) the statute of limitations has run on the filing of the pendent claim in state court.

Here, there is no suggestion that the statute of limitations had run on filing the pendent claims in state court. Nor have we found any other extraordinary circumstances which would lead us to believe that the retention of jurisdiction was necessary in this instance. To the contrary, we can identify one very good reason why the district should not have reached the merits of plaintiffs' commonlaw misrepresentation claims: viz., the unsettled nature of Wisconsin law in the area of justifiable reliance.[2]

1. The Judicial Improvements Act of 1990 (Pub.L. 101–650) codified the case law doctrines of pendent and ancillary jurisdiction under the term "supplemental jurisdiction." *See* 28 U.S.C.A. § 1367 (West Supp.1992). 28 U.S.C.A. § 1367(c)(3) provides that a federal district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it possesses original jurisdiction. *Id.*

2. In addition, it should be noted that throughout this case the parties relied on federal securities

Under Wisconsin law, justifiable reliance is an element of intentional misrepresentation and strict responsibility for misrepresentation. However, in *Imark Industries, Inc. v. Arthur Young & Co.*, 141 Wis.2d 114, 130, 414 N.W.2d 57, 64 (1987), the Wisconsin Court of Appeals stated that "justifiable reliance" is not a requirement for a Wisconsin claim of negligent misrepresentation. The negligent representation need only be a material inducement, and the plaintiff must actually rely upon it. In so concluding, the *Imark* court relied upon the Wisconsin Pattern Jury Instructions which lay out the elements of the three types of misrepresentation recognized in Wisconsin. Wisc. JI–Civil 2403, which governs negligent misrepresentation, does not mention justifiable reliance. Instead, it provides that a plaintiff's negligence should be considered by the jury as part of a comparative negligence calculation.

The *Imark* court's conclusion is at odds with section 552 of the Restatement (Second) of Torts, which includes a justifiable reliance requirement as an element of negligent misrepresentation. Moreover, there is some indication that the Wisconsin Supreme Court looks to the Restatement. For example, in *Merrill Lynch v. Boeck*, 127 Wis.2d 127, 143, 377 N.W.2d 605, 612 n. 4 (1985), the Wisconsin Supreme Court cited to section 551 while discussing a broker's liability for non-disclosure. *Id.*

It is not the task of a federal court to reconcile these apparent conflicts in Wisconsin law. Rather, sorting out the vagaries and complexities in this body of state law is a task best suited for the courts of the State of Wisconsin.

## CONCLUSION

The district court abused its discretion in retaining this case after dismissing the federal claims for failure to comply with the statute of limitations. We, therefore, vacate the district court's entry of summary judgment on the state law claims. The district court is instructed to dismiss plaintiffs' action without prejudice to plaintiffs' refiling it in Wisconsin state court.[3] *Cf. Bernstein v. Lind–Waldock & Co.*, 738 F.2d 179 (7th Cir.1984) (summary judgment vacated with directions to dismiss the action without prejudice to plaintiff's refiling it in state court where retention of state law claim was an abuse of pendent jurisdiction).

VACATED.

---

law in briefing the Wisconsin state law misrepresentation claims. This approach is imprecise as Wisconsin law should be applied in the adjudication of Wisconsin state law claims.

**3.** It is our understanding that under Wisconsin law the statute of limitations for plaintiffs' state law claims was tolled from the commencement of this suit in federal court. Wis.Stat.Ann. § 893.15(3) (1983).